Andrews, J.
The plaintiff received the sheet-iron under a contract of affreightment, by which he agreed to carry it on the ship Cella from London to the port of Hew York, and there deliver it to the shippers, or their order, on payment of the freight and charges specified. The bill of lading exempted the carrier from liability for loss or damage to the goods from certain enumerated causes, and among others, from “ any act, negligence or default whatsoever of the pilot, master, or mariners.” Construing the language of this exemption in the light of the context, and of the maxim noscitu/r a sooiis, it must, we think, be held to relate to negligence occurring while the goods were upon the ship in the course of the voyage, and that it cannot be held to protect the carrier from liability for negligence occurring after the goods were unladen, and while they remained in his custody before delivery.
By another clause in the bill of lading, it is provided that the goods should be taken from along side by the consignee “ immediately the vessel is ready to discharge, or otherwise the privilege is reserved to the vessel to land them on the pier, or put them into craft, or deposit them in the warehouse designated by the collector of the port of New York, all at the expense of the consignee, and at his risk of fire, loss or injury.” The landing of the goods upon the pier of the plaintiff, under the circumstances of this case, did not, we think, change his relation to the goods, and divest him of his custody of them as carrier. The privilege to make this disposition of them was secured to him by the bill of lading, unless the consignee was ready to take the goods from the ship whenever it was ready to discharge. It was not incumbent upon the plaintiff to give notice of a readiness to discharge the goods as a condition of his exercising the privilege of depositing them upon the pier. They, however, remained after such deposit in his custody as carrier, subject to the modified responsibility, created by the contract, until after *198 notice had been given to the consignees of their arrival, and a reasonable time had elapsed for their removal. Meanwhile the defendants assumed the risk of “ fire, loss or injury ” to the goods, .according to the contract, but the language used did not exempt the plaintiff from liability for an injury resulting from his own negligence. (Steinweg v. Erie Railway, 43 N. Y., 123; Edsall v. Camden and Amboy R. R. Co., 50 id., 661.)
The defendants were entitled to set up, in answer to the claim of the plaintiff to recover the freight, any breach by the carrier of his contract, and to have any damages resulting therefrom applied upon the claim of the plaintiff. (Code, § 150.) The only exceptions in the case are those taken to the refusal of the court to direct judgment for the plaintiff upon the motion made at the close of the defendants’ evidence and to the charge. The first ground of the motion for judgment was that the facts proved by the defendants constituted a trespass, and did not, under the pleadings, or otherwise, constitute a counter-claim or set-off to the demand of the plaintiff. This ground was untenable for the reason that, irrespective of the taking of the tarpaulin, there was evidence from which the jury might have found that the goods were injured while they were in the possession of the plaintiff as carrier, and that he had negligently omitted to protect them from the storm.
The second ground of the motion is based upon the assumption that the bill of lading protected the carrier from liability, and is answered by the suggestions already made; and the third specification, that no defence had been proved, does not require special consideration. This motion was properly denied.
The judge, in his charge to the jury, instructed them that if the stevedores, captain, or any agent of the ship took away the tarpaulin, and the injury to the iron resulted from that taking, the defendants were entitled to recover whatever damage was sustained. It appeared from the evidence that tarpaulins had been sent by the defendants to cover the iron *199 and protect it from injury from the impending storm. The iron was then upon the plaintiff’s pier, having been unloaded from the ship during the night before. While the defendants’ agents were engaged in placing the tarpaulins over the iron, and were about to use the last and largest one which was lying on the pier, it was forcibly taken by persons in the employment of the plaintiff, against the protest of the defendants’ servants, to cover the hatch of the ship, which had been left open, and it was used for that purpose. In substance, the defendants were prevented from protecting their property, by the use of means provided by themselves* by the servants of the plaintiff, who appropriated to the use of the master, and for the protection of his property in their charge, the means which the defendants had supplied for the protection of the iron, and which the jury have found would, if the defendants had been allowed to use them, have prevented the injury to their property. For the injury to the goods sustained under such circumstances the plaintiff was liable. The goods were at the time in the plaintiff’s custody, and he owed a duty to the defendants to use reasonable and ordinary care for their protection. The defendants had the right to provide additional security against injury to the property from the storm, and their servants were lawfully on the pier for the purpose of protecting it. The interference of the plaintiff’s servants in taking the tarpaulin was wrongful, but the injury to the iron in consequence thereof was not willful, in the sense that they designed it; nor in taking the tarpaulin were they pursuing any objects of their own, but they were at the time engaged in their master’s business, and although he did not authorize the wrong committed, it was done in the course of their employment for him, and for his benefit, and for their act the master is, we think, within the authorities, chargeable. (Addison on Torts, 23 ; Smith’s Master and Servant, 152; Higgins v. The Watervliet Turnpike Co., 46 N. Y., 23; Huzzey v. Field, 2 Cr., M. & 11., 432; Seymour v. Greenwood, 6 H. & *200 N., 359; Limpus v. Lond. Gen. Omnibus Co., 1 H. & C., 526; Tuberville v. Stamps, 1 Lord Ray., 265.)
If the point had been taken that the injury was not the subject of a counter-claim, in the action, and was not available as a defence or by way of recoupment, a question would be presented which it is unnecessary now to consider. The evidence in respect to the tarpaulin had been received without objection. The exception to the charge was pointed simply to the question of the master’s liability under the circumstances for the act of his servants, and did not raise the question whether, conceding his liability, it could be made the subject of a counter-claim.
The judgment should be affirmed with costs.
All concur.
Judgment affirmed.