PECK v. NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY.

*Master and servant — presumption that servant acts within scope of employment.*
  *Passenger — ejection of from railroad car. Damages — when punitive not*
  *given. Verdict — what excessive.*

A brakeman was stationed by the defendant, a railroad company, at the entrance to one of its passenger cars, with orders to notify gentlemen not in charge of ladies that such car was reserved, and direct them to cars forward. Plaintiff entered the car after receiving such notice, and was ejected therefrom. *Held*, that, although the brakeman, in removing plaintiff, exceeded the orders given him, as he did no more than the defendant had a right to do under the circumstances, the presumption was, that, in doing it, he was acting within the scope of his authority, and a refusal to nonsuit plaintiff, on the ground that he was not, was proper.

Where a person was ejected from a railway car by a servant of the company with more than necessary force, but no malice was shown, *held* not a case calling for punitive damages, but simply for compensation for the pain, suffering and loss of time occasioned by the act. Accordingly a verdict of

Peck v. New York Central and Hudson River Railroad Co.

$5,000, where no material pain or suffering caused by the act was testified to by any one other than plaintiff, and this was by a medical expert attributed to other causes; *held* to be so excessive as to show that the jury were affected by passion, prejudice or undue influence, and that such verdict should be set aside.

MOTION by defendant for a new trial upon case and exceptions ordered to be heard, in the first instance, at the general term, after a verdict at the circuit for $5,000 in favor of plaintiff.

The action was brought by John M. Peck to recover damages alleged to have been sustained by being forcibly removed from one of defendant's cars by an employee of defendant. The jury found a verdict in favor of the plaintiff for $5,000.

*A. J. Parker, Jr.*, for plaintiff.

*Frank Loomis*, for defendant.

Present — LEARNED, P. J., BOARDMAN and JAMES, JJ.

JAMES, J. On the 11th of January, 1871, the plaintiff, having purchased a ticket for defendant's road, sought to enter a car, and was notified by an employee of the company that the car he was about to enter had been set apart for ladies, and gentlemen accompanying ladies, and directed to a forward car. This employee had been stationed at the train by a person in charge there, directed to prevent gentlemen unaccompanied by ladies from entering said car.

On receiving this notice and direction plaintiff got upon the platform of a car next in rear of the ladies' car, looked in a moment, then turned and entered said ladies' car; the employee arrested his progress and removed him from the car by force.

When the plaintiff rested his case a motion was made for a nonsuit, on the ground that the brakeman was not acting within the scope of his employment in removing plaintiff, and, therefore, defendant was not liable for his act. This motion was denied and defendant excepted.

That a master is not liable for the wrongful acts of his servant, unless done in his service and within the scope of his employment, will not be disputed. If the employee who removed the plaintiff is to be regarded as a brakeman, unauthorized to perform any duties

other than such as pertained to that office, and volunteered the act in question without other authority or direction, then the defendant was not liable in this case. But as brakeman he was an employee of the company, subject to its authority and the direction of its officers, and as such employee he was directed, by the person in charge, to see that gentlemen without ladies did not enter that car, and it was in the performance of that service he did the act complained of. It is true he was not ordered to remove persons from the car; his orders were to notify gentlemen not in charge of ladies that such car was reserved, and direct them to cars forward; so that in removing plaintiff he clearly exceeded the orders given him. But this fact the plaintiff could not know; as between him and the company it was enough that the act was done in the prosecution of his master's business, and if he deviated from or exceeded his instructions that fact did not excuse the master from responsibility. The order to the brakeman, and his performance, warrants the conclusion, even as a matter of law, that he was acting within the scope of the employment he was then set to perform, if persons disregarded his directions and persisted in entering that car. The defendant had the right to set apart a car for lady passengers, and exclude other persons from it; if other persons, after notice, persisted in entering it the defendant had the right to enforce their removal, using no more force than necessary for that purpose. The brakeman did no more than the master had the right to do under the circumstances, and the presumption is that in doing it he was acting within the scope of his then employment. See *Higgins* v. *Watervliet Turnpike Co.*, 46 N. Y. 23; *Jackson* v. *Second Av. R. R. Co.*, 47 id. 274; *Cosgrove* v. *Ogden*, 49 id. 225. Therefore, the motion for a nonsuit was properly denied.

There are several other exceptions in the case, but none which I deem it necessary to discuss.

The more important question presented by the case arises on the motion for a new trial, on the ground of excessive damages. It is certain there was no malice in this case, either on the part of the defendant, or the servant who did the act complained of; it was simply the exercise of more force than necessary in the accomplishment of a legal act. It was not a case, therefore, calling for punitive damages, but simply one for compensation for the pain, suffering and loss of time occasioned by the act. Upon this question no evidence was given by the plaintiff other than his own; no medical

Peck v. New York Central and Hudson River Railroad Co.

attendant to show his condition was called, nor any medical expert to establish that the sickness, pains and sufferings, stated by himself, were the result, natural or probable, of the force used; while a medical expert was called on the part of the defense, who testified that the sickness and pains described by plaintiff were not the natural or probable result or effect of the force used upon him, and attributed the sickness and pains to causes pertaining to the plaintiff.

The plaintiff's statements of his injuries, in their nature and duration, are inconsistent with his condition and acts after the occurrence. His whole statement, as to the nature, degree and extent of his injuries, is improbable from the force used and the manner of its use upon him, and leaves the impression that his relation of it is highly colored.

In actions other than those upon contracts, sounding in damages, it is strictly within the province of the jury to estimate the loss suffered, and courts are reluctant to interfere, and will not interfere unless there is manifest abuse, or the sum is so large as to evidence that the jury were affected by passion, prejudice, or some undue influence.

In this action the sum is so large as to demonstrate such to be the case; $5,000 is a sum entirely beyond what was justified by the facts. It would seem as if intended as a punishment of the defendant, an amount that would not have been given against a natural person, and satisfies the mind that the jury were unduly influenced by some extrinsic and unknown cause, or by passion or prejudice against the defendant. In either case the verdict should not be allowed to stand.

For this latter reason the verdict should be set aside, and a new trial granted on payment of costs of the circuit.

*New trial ordered.*