KENNEDY v. WHITE.

(Supreme Court, Appellate Division, Second Department. March 4, 1904.)

1. PRACTICE—DISMISSING COMPLAINT—APPEAL—REVIEW.

On appeal from a judgment dismissing a complaint every material issue must be resolved in plaintiff's favor, and the dismissal is erroneous unless plaintiff's evidence precludes the possibility of recovery or shows some fact fatal to plaintiff's right of action, or the pleadings present no cause of action.

2. MASTER AND SERVANT—SERVANT'S TORT—LIABILITY OF MASTER.

A crowd of boys were creating a disturbance in front of a tenement building, when the janitor ran out of the building, armed with a stick. The crowd of boys ran, and the janitor hurled the stick at plaintiff's son, a mere on-looker, on the other side of the street, and the boy was injured. Held, that the janitor's employer was not liable for the tort.

Woodward, J., dissenting.

Appeal from Trial Term, Kings County.

Action by Catherine Kennedy against Alfred T. White. From a judgment in favor of defendant, plaintiff appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, JENKS, WOODWARD, and HOOKER, JJ.

W. C. Beecher, for appellant.

R. Burnham Moffat, for respondent.

HOOKER, J. The complaint was dismissed upon the trial after the plaintiff had completed her opening to the jury. Before addressing that body, her attorney stated to the court that with its permission, and by the consent of counsel, he would present a full statement of facts as he understood the witnesses would testify, to the end that he might invite a motion to dismiss, and to have the question of law whether the facts constituted a cause of action determined at the outset. This course was pursued, and resulted in the dismissal of the

complaint.  From the judgment entered thereon the plaintiff appeals.

The record therefore presents legal questions in the same phase as. if the plaintiff had been nonsuited, or as if a verdict had been directed against her at the close of all the evidence.  Unless the opening shows such facts as preclude the possibility of recovery, or some other fact fatal to the plaintiff's right of action, or where the pleadings present no cause of action, the dismissal is erroneous.  Every material issue must be resolved in plaintiff's favor.  Hoffman House v. Foote, 172 N. Y. 348, 65 N. E. 169; Montgomery v. Boyd, 78 App. Div. 64, 79 N. Y. Supp. 879.  The facts stated by the plaintiff were, briefly, these: The defendant was the owner of tenement houses at the corner of Hicks and Warren streets, in the borough of Brooklyn.  For a number of years prior to the day of the occurrence of the facts which give rise to the action a man named Voltz had been around the premises either as watchman or janitor, or at least had been seen from time to time removing ashes from the premises, sweeping out the place, sweeping the sidewalk, and "from time to time Voltz drove away unruly and noisy boys who had congregated in front of the flats in that neighbor-. hood."  On the day in question Voltz was on the premises, when the plaintiff's son, Arthur Kennedy, coming from his home, was walking by on the sidewalk across the street from the flats, when the former noticed a number of boys who were "running on the same side of the street as the flats, down in front of the flats, laughing, shouting, and making quite a noise."  The boys in that neighborhood are somewhat unruly and noisy.  While plaintiff's son was standing there, Voltz came running out of the doorway of the premises with a stick of wood in his hand, when the crowd of boys, who were on the same side of the street as the flats, cleared off, and went back to the corner from which they came.  The plaintiff's son was directly across the street from where Voltz came out.  When the latter emerged from his premises upon the sidewalk, he looked after the running boys, then "looked off where plaintiff's boy was, and then threw this stick he had and struck the boy upon the arm," inflicting injuries upon him.  The plaintiff has lost the services of her son.  Between the outer wall of defendant's flats and the place where the boy stood when he was injured were the sidewalk in front of the premises and the whole width of the highway.

This state of facts required a dismissal of the complaint.  The principles of law applicable to the case have been settled by a long line of carefully and well considered decisions.  The difficulty consists in their proper application.  We had occasion to review the most important of these in the decision of Collins v. Butler, 83 App. Div. 12, 81 N. Y. Supp. 1074, where it was held as matter of law that the owner of a store was liable for the act of his clerk in perpetrating an unprovoked, wanton assault upon a customer.  Mali v. Lord, 39 N. Y. 381, 100 Am. Dec. 448; Dupre v. Childs, 52 App. Div. 306, 65 N. Y. Supp. 179, affirmed on opinion below 169 N. Y. 585, 62 N. E. 1095; Rounds v. D., Lack. & W. R. R. Co., 64 N. Y. 129, 21 Am. Rep. 597; Cohen v. D. D., E. B. & V. R. R. Co., 69 N. Y. 170; Mott v. Consumers' Ice Co., 73 N. Y. 543; Ochsenbein v. Shapley, 85 N. Y. 214; Fogarty v. Wanamaker, 60 App. Div. 433, 69 N. Y. Supp. 883; Burns v. Glens Falls R. R. Co., 4 App. Div. 426, 38 N. Y. Supp. 856; Higgins v.

Watervliet Turnpike Co., 46 N. Y. 23, 7 Am. Rep. 293; Meehan v.
Morewood, 52 Hun, 566, 5 N. Y. Supp. 710, affirmed on opinion below
126 N. Y. 667, 27 N. E. 854; Geraty v. Stern, 30 Hun, 426; Dwinelle
v. N. Y. C. & H. R. R. Co., 120 N. Y. 117, 24 N. E. 319, 8 L. R.
A. 224, 17 Am. St. Rep. 611; Palmeri v. M. R. Co., 133 N. Y. 261,
30 N. E. 1001, 16 L. R. A. 136, 28 Am. St. Rep. 632; Girvin v. N.
Y. C. & H. R. R. Co., 166 N. Y. 289, 59 N. E. 921. The discussion
of the rules of law bearing upon the master's liability for negligent,
wanton, or willful acts of his employés contained in these cases has
culminated in the recent decision of the Court of Appeals that the
doctrine is as follows:

"For the acts of a servant, within the general scope of his employment, while
engaged in his master's business, and done with a view to the furtherance of
that business and the master's interest, the master will be responsible, whether
the act be done negligently, wantonly, or even willfully. But if a servant goes
outside of his employment, and without regard to his service, acting mali-
ciously, or in order to effect some purpose of his own, wantonly commits a
trespass, or causes damage to another, the master is not responsible." Girvin
v. N. Y. C. & H. R. R. Co., supra; Mott v. Consumers' Ice Co., supra.

The facts upon which the Court of Appeals decided the Girvin Case
were substantially that the plaintiff, a lad of 14 years, was engaged
with others in a trespass upon the defendant's freight train, for the
purpose of unlawfully riding thereupon; that just as the train started
one of defendant's brakemen came toward him, and the plaintiff, after
running across a flat car, jumped from the train, and that as he jumped
the brakeman also jumped from the car upon him, striking him before
he reached the ground, breaking his leg, and then, raising him up
from the ground, continued the assault. In that case the court said
it was inclined to the view that the jury might have found that the as-
sault upon the plaintiff commenced on the car before they left the train,
and announced that, "If the assault was commenced before leaving
the car, the brakeman was acting within the scope of his employment,
and the defendant became liable for his acts." Page 292, 166 N. Y.,
and page 821, 59 N. E. The case at bar presents an assault of some-
what different character. Here Kennedy, when hurt, was not, and
had not been, in the company of the crowd of boys, and there is no
evidence upon which it could be predicated that Voltz conceived Ken-
nedy to be committing a breach of the peace. The boy was simply an
observer of what was taking place. He had not been, and was not
then, nearer the plaintiff's premises than the sidewalk across the pub-
lic street. In the Girvin Case the employé was directing his attention
toward and his assault upon one who he evidently conceived was in-
terfering with his master's property and rights. No possible view of
the facts at bar would warrant an assumption that Voltz had in mind
that the injured boy was doing anything to prevent which he might
possibly be acting to the furtherance of his master's business or his
master's interests. If the brakeman in the Girvin Case had chased off
his train, by threatening to throw a lump of coal, a trespassing crowd
of boys, and then, turning, and discovering a strange lad at the side
of the railroad and without the right of way, had struck him with the
coal, this case would have been presented; and we do not believe that

the facts would have been thought such as to warrant their submission°
to a jury. Or, in the case at bar, had Voltz aimed his cudgel at the
retreating crowd of boys, and injured one, the rule in the Girvin Case
might have been held applicable; for then Voltz, considering, as he
might, that it was his duty in the service of his master to prevent a
breach of the peace on the sidewalk in front of his master's premises,
would have been doing an act, although accomplished by negligence,
wantonness, and willfulness, perhaps, which the jury would have been
permitted to say was in the master's interest. This illustration is used
without deciding the proposition which was argued at the bar whether
the defendant would be liable in a case where the servant set in motion
on the master's premises forces which accomplished the infliction of
injuries at a point without their limits.

The case of Grimes v. Young, 51 App. Div. 239, 64 N. Y. Supp.
859, decided in this department upon the opinion of Mr. Justice Bart-
lett, seems to present a state of facts more nearly similar to those in
hand than were disclosed in the Girvin Case. The plaintiff's intes-
tate was shot down by one Buck, night watchman on defendant's
premises, and this language is to be found in the opinion:

"It is not clear from the evidence that when Buck fired the fatal shot he had
gone on duty for the night as the defendants' watchman; but, whether he had
or not, it is manifest that his assault upon Grimes was an act wholly outside
the scope of his employment, and having no connection whatever therewith.
The Grimes boy was not upon the premises of the defendants, nor had he made
any attempt to trespass upon their property, or interfere therewith. He had
been bathing in the river with a number of companions, and after leaving the
water, and while standing upon the public wharf, was shot down by Buck
without the slightest provocation." Page 241, 51 App. Div., and page 860, 64
N. Y. Supp.

In that case it was held that the master was not liable.

The conduct of Voltz, we think, was such that there can be drawn
therefrom no inference that he was acting, or intended to act, for his
master in striking the boy Kennedy. He went outside his employ-
ment, and, without regard to his service, committed a trespass for
which the defendant is not responsible.

The judgment should be affirmed.

Judgment affirmed, with costs. All concur, except WOODWARD, J., who
dissents, and BARTLETT, J., who takes no part.

WOODWARD, J. (dissenting). While this case is not free from
doubt, I am disposed to dissent from the result reached by the ma-
jority of this court. Assuming the most favorable inference from
the facts, the defendant's janitor, for the purpose of driving away
some noisy and troublesome boys, ran out upon the sidewalk in front
of the defendant's premises, and, seeing plaintiff's son on the opposite
side of the street, and no doubt assuming him to have been one of
those who had been producing the disturbance, threw a club at him,
causing the injuries complained of here. If he was the defendant's
janitor or watchman, and had charge of the premises, he was given
the authority to drive away such persons as should trespass upon or
annoy those who were lawfully in possession of the premises, and in
the act of driving these boys away he was doing the work of the mas-

ter. He had the right to use such force as was necessary to accomplish the result, and if he used more force, or improper means, he was still doing what the master might have done, and the latter is responsible within well-defined limits. In the case now before us the janitor did not leave the defendant's premises. He was still upon the ·sidewalk, with reference to which he had, or might have had, duties to discharge for the master; the injury being done by throwing a stick across the street. If, while upon the sidewalk, and in the act of driving the plaintiff's son away from the premises, the janitor had struck the boy with a club, it seems quite clear that, within the authorities, the defendant would have been liable for the tort; and it is difficult to understand how the rule can be different where the same result follows from the throwing of the club across the street. The janitor was none the less engaged in the work of the master, and the mere fact that he made a mistake and threw the club at a boy who had not been engaged in the mischief does not alter the case. The rule recognized in all the recent cases is that for the acts of the servant, within the general scope of his employment, while engaged in his 'master's business, and done with a view to the furtherance of that business and the furtherance of the master's interest, the master will be responsible whether the acts are done negligently, wantonly, or even willfully. In general terms, if the servant misconducts himself in the course of his employment, his acts are the acts of the master, who must answer for them (Mott v. Consumers' Ice Co., 73 N. Y. 543, 547); and, while there are exceptions to this rule, they all proceed upon the ground that the acts of the servant are not done in the course of the service, and were not such as the servant intended and believed to be for the interests of the master (Mott v. Consumers' Ice Co., supra). Assuming that the janitor in this case supposed that he was doing the will of the master in driving these boys away, that he was engaged in a work which had for its object the welfare of the master's property, can it be said that the master was not liable because the servant exceeded his authority to drive away those who were actually engaged in disturbing the premises, and committed an assault upon an entirely innocent person? It seems to me that the only test in cases of this character is whether the servant at the time is engaged in the general work of the master, whether his acts are in the discharge of his duty as an employé or are such as in their very nature take them out of this classification. Generally, where a man is at work for another, he is presumed to use his energies in behalf of his employer; and it is only where he abandons this employment, and assumes to act for his own purposes, that the master is relieved from responsibility for his acts. ' The general rule is that of liability, and this continues unless the fact is proved to the satisfaction of the jury that the servant willfully and maliciously, and to effect some purpose of his own outside of his employment, committed the injury; in other words, that at the time of the injury, and in the act of its commission, the relation of master and servant did not exist. Mott v. Consumers' Ice Co., 73 N. Y. 549. Clearly, the jury might have drawn the inference that the janitor was in the discharge of his duty in driving away the boys who had been disturbing the tenants

of the building, and, if this was in fact his duty, the methods which he made use of, or the fact that he threw a club off of the defendant's premises, did not alter the case; the master was answerable for the conduct of his servant. A willful act which will exempt a master from liability for the tort of his servant must be done outside of his duty and his master's business, and when the master is sued for an injury resulting from the tortious act of his servant while apparently engaged in executing his orders, claims exemption upon the ground that the servant was in fact pursuing his own purposes without reference to his master's business, and was acting maliciously and willfully, it must ordinarily be left to the jury to determine this issue upon a consideration of all the facts and circumstances proved. Rounds v. D., L. & W. R. R. Co., 64 N. Y. 129, 137, 138, 21 Am. Rep. 597, and authority there cited; Craven v. Bloomingdale, 171 N. Y. 439, 450, 64 N. E. 169. See Palmeri v. M. R. Co., 133 N. Y. 261, 30 N. E. 1001, 16 L. R. A. 136, 28 Am. St. Rep. 632. So far as appears, the janitor, in anything that he did, did not act for any purpose of his own, but to drive away the boys from the premises of his master. It matters not that he exceeded the powers conferred upon him by his principal, and that he did an act that the principal was not authorized to do, so long as he acted in the line of his duty; or, being engaged in the service of the defendant, attempted to perform a duty pertaining, or which he believed to pertain, to that service. Lynch v. Metropolitan El. R. Co., 90 N. Y. 77, 86, 87, 43 Am. Rep. 141, and authorities there cited. Of course, if the janitor simply ran out into the street and threw a club at the plaintiff's son, he would not be acting within the line of any duty which he owed to the master, and he would be alone liable. But if, as is here suggested, the janitor was in the act of driving off trespassers, and threw this club, he was engaged in doing that which he conceived to be in the interests of his master, and the latter is liable for his errors in judgment, or for faults of temperament by which third persons suffer injury.

I think this judgment should be reversed.