MILDRED MULLER, by MARY FINCK, Her Guardian ad Litem, Respondent, v. FRANCIS HILLENBRAND, Appellant.

MARY FINCK, Respondent, v. FRANCIS HILLENBRAND, Appellant.

First Department, November 9, 1917.

**Master and servant — liability of owner of apartment house for assault committed by janitor — evidence raising question for jury — only compensatory damages recoverable — verdict excessive.**

Where the janitor in charge of an apartment house committed an assault upon a child who was roller skating upon the sidewalk in front of the premises to the annoyance of the tenants of the apartment, the owner of the building may be held liable.

As a general rule a master is liable for the acts of his servant within the general scope of his employment while engaged in his master's business and done with a view to the furtherance thereof and to the interests of the master, even though the act be done negligently, or wantonly, or willfully.

Under the facts aforesaid the liability of the owner of the apartment house was properly submitted to the jury and they were warranted in awarding compensatory damages to which the recovery should be limited.

*Held*, that a verdict of $7,500 was excessive and should be reduced to $5,000 and the recovery in another action brought by the mother of the infant should also be reduced to the amount of her disbursements, as no loss of services of the infant was shown.

CLARKE, P. J., dissented, with memorandum.

APPEAL in each case by the defendant, Francis Hillenbrand, from judgments of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 20th day of October, 1916, upon verdicts of a jury, the verdict in the first action being for $7,500 and in the second action for $1,000, and also from orders entered in said clerk's office on the 24th day of October, 1916, denying defendant's motion in each case for a new trial made upon the minutes.

*Wendell P. Barker*, for the appellant.

*Henry Siegrist*, for the respondents.

LAUGHLIN, J.:

The action by the infant plaintiff is for the recovery of damages for personal injuries sustained by her by an assault

committed by the defendant's janitor; and the other action is by her mother to recover damages resulting from the injuries to her daughter.

The assault was committed on the 9th day of September, 1914. The defendant was then the owner and possessor of the seven-story double apartment house situated on the northeasterly corner of One Hundred and Fifty-first street and Bradhurst avenue, which fronted on the avenue and was known as Nos. 192 and 194, and had been from the month of March, that year. He was also the owner and in possession of a seven-story apartment house adjoining it on the north, known as Nos. 196 and 198 Bradhurst avenue, and had been from the 1st of July, 1911. On the opposite or westerly side of the avenue there is a park known as " Colonial Park." One Friedman had been in the employ of the former owner of the apartment house known as Nos. 196 and 198 Bradhurst avenue, and in charge thereof as janitor or superintendent from the 1st of July, 1911, and he continued in such capacity in the employ of the defendant after the defendant became the owner thereof; and when the defendant acquired the corner apartment house in March, 1914, Friedman was also placed and remained in charge thereof as janitor or superintendent for the defendant. About three years prior to the accident and before defendant acquired the corner apartment house the infant plaintiff and her mother occupied an apartment in it, and they thereafter moved into an apartment in No. 196 before Friedman became janitor thereof, and continued therein for a period after he became janitor and then moved into an apartment in the next building on the north, known as No. 200, where they resided at the time of the assault. It was expressly admitted by the pleadings that Friedman was the " janitor or superintendent " of the defendant's apartment houses. The janitor and his wife resided in a rear apartment on the ground floor of No. 196. The infant plaintiff was at the time of the assault eleven years of age; and she was apparently well known to the janitor for he addressed her by her given name.

No testimony was given on behalf of the defendant with respect to the authority conferred upon the janitor, with the exception that the janitor testified that on one occasion

when he informed the defendant that boys playing ball had broken some windows the defendant instructed him that any time when he saw boys playing there and breaking the windows to call the police officer on the beat. Those instructions manifestly had no application to the circumstances of this case; and even if such instructions had been given by the defendant with respect to roller skating that would not relieve him for damages caused by the violation of the instructions, provided the acts of the janitor were within the scope of the general authority conferred by his position and duties. (*Herrman* v. *New York Edison Co.*, 175 App. Div. 535; *Becker* v. *Borck*, 157 N. Y. Supp. 505; *Dealy* v. *Coble*, 112 App. Div. 296. See, also, *Rounds* v. *D., L. & W. R. R. Co.*, 64 N. Y. 129, 136.) The evidence shows that the janitor and his wife had charge of cleaning the halls and windows of the apartment houses including the windows fronting on the streets and of cleaning the sidewalks in front and adjacent thereto; and that he showed apartments to prospective tenants. There is also evidence that he leased apartments, but that was controverted. The uncontroverted evidence shows that the tenants had been annoyed by the noise caused by children roller skating on the sidewalk in front of the apartments and had complained to the janitor and his wife with respect thereto, and that acting on those complaints, they had endeavored to prevent the children from roller skating on the walk. The evidence on the part of the plaintiff, which is substantially corroborated by two of her playmates, shows that immediately prior to the assault she and three girl playmates of about her age or a little younger, who, however, did not reside in the block, had been roller skating on the walk for some considerable time; that they were observed by the janitor's wife who summoned him from his work of cleaning the hall in Nos. 196 and 198, saying, "Pop, the tenants are complaining that the children are making a noise," and he went out on the walk and addressing the plaintiff, who was then standing on the walk with her roller skates on, said, "Mildred, get off the sidewalk," to which she replied, "I won't," saying also that her mother had forbidden her to go across to the park, whereupon he said,

" If you don't get off, I will throw you off, and I will kick you off," and she answered, " I would like to see you," and he then said, " Get to hell off the sidewalk," and took her by the left arm and threw her or shoved her off the sidewalk right at the corner of One Hundred and Fifty-first street and Bradhurst avenue, and she fell, her back striking the curbstone of One Hundred and Fifty-first street, causing an injury to her spine. The janitor and his wife denied the assault but admitted that acting on complaints of tenants he had prevented the infant and her playmates from roller skating on the walk and drove them off the walk some hours earlier in the day. Two other witnesses were called by the defendant whose testimony tends to show that the assault could not have occurred at the time claimed by the plaintiff. This evidence presented a fair question of fact for the jury. It cannot be said that the testimony of the infant corroborated by two of her playmates, the third not having been called owing to absence from the State, is improbable, and, therefore, the jury were warranted in finding that the assault was committed substantially as claimed by the plaintiff.

If the jury in any view of the evidence were warranted in finding that the janitor was acting for his employer and within the general scope of his employment the liability of the defendant therefor, as found by the jury, must be permitted to stand for that question was submitted to the jury by a most fair and impartial charge. On this point the only question requiring consideration is, therefore, whether as matter of law the complaint should have been dismissed. No controlling decision precisely in point on the facts has been cited and we have found none. The question of law presented by the motion to dismiss is not free from doubt, but I am of opinion that there was a question of fact which was properly submitted to the jury. There is and can be no doubt on the evidence that the janitor in attempting to stop the roller skating was actuated solely by a desire to further the interests of his employer by preventing the annoyance to the tenants of which they had complained and endeavoring to promote their comfort and to keep them contented. The liability of the defendant does not depend upon whether he owed a duty to his tenants to prevent the annoyance to them

incident to the roller skating or upon whether he had jurisdiction over the sidewalk or authority to prevent the children from roller skating thereon. (*Lynch* v. *Metropolitan El. R. Co.,* 90 N. Y. 77; *Sharp* v. *Erie R. R. Co.,* 184 id. 100.) It is manifest that defendant was interested in keeping the tenants and in having them contented and satisfied for upon that might depend the duration of their stay. It is not improbable that if defendant had been present and the complaints had been made to him he would have deemed it to his interest to comply with the desires of his tenants and if possible to prevent the annoyance to them by stopping the children from roller skating on the walk. It is no answer to say that it is improbable that he would have committed an assault, for if his janitor had authority to endeavor to prevent annoyances to his tenants by children roller skating on the sidewalk, defendant would be liable even though the janitor exceeded that authority and committed the assault. The case nearest in point on the facts is *Kennedy* v. *White* (91 App. Div. 475). There it was sought to hold the owner of a tenement house liable for an assault committed by his janitor by throwing a stick of wood at and hitting the plaintiff's son who was on the sidewalk across the street from the tenement house. A crowd of boys had congregated on the sidewalk in front of the tenement house and were making considerable noise. The janitor came out, evidently to disperse them, but when he reached the sidewalk the boys who had been creating the disturbance had run away and he threw the stick of wood at the plaintiff's son, who had not been on the sidewalk or with the boys who had congregated thereon. The dismissal of the complaint was sustained, according to the majority opinion, on the ground that in no view of the evidence could it be found that the janitor had any reason to believe that the plaintiff's son had taken any part in making the disturbance; but the court expressed the opinion that if the assault had been committed on one of the boys engaged in creating the disturbance on the sidewalk in front of the tenement house a case would have been made out for submission to the jury. Of course, that precise point was not presented for adjudication, but the view of the majority of the court thus deliberately stated is entitled to great weight and especially so

since one of the justices wrote a dissenting opinion holding that even on the facts of that case the liability of the defendant presented a question for the jury. The general rule is well settled in this jurisdiction that the master is liable for the acts of his servant within the general scope of his employment while engaged in the master's business and done with a view to the furtherance thereof and of the interests of the master, even though the act be done negligently or wantonly or willfully, but that if the servant without regard to his master's business, acting maliciously or to effect some purpose of his own, goes outside of his employment and wantonly commits a trespass or causes damage to another the master is not liable; and whether the servant acted within the scope of his employment and for his master often becomes a question of. fact. (*Girvin* v. *N. Y. C. & H. R. R. R. Co.*, 166 N. Y. 289; *Mott* v. *Consumers' Ice Co.*, 73 id. 543; *Rounds* v. *D., L. & W. R. R. Co.*, *supra; Craven* v. *Bloomingdale*, 171 N. Y. 439; *Palmeri* v. *M. R. Co.*, 133 id. 261; *Lynch* v. *Metropolitan El. R. Co.*, *supra; Katz* v. *Lutz*, 176 App. Div. 460; *Herrman* v. *New York Edison Co.*, *supra; Sharp* v. *Erie R. R. Co.*, *supra; Kurland* v. *Roche*, 165 N. Y. Supp. 807; *Becker* v. *Borck*, *supra*. See, also, 6 Labatt Mast. & Serv. [2d ed.] § 2364.) I am of opinion that under this general rule the facts required the submission of the case to the jury; and that they were warranted in awarding compensatory damages, to which the recovery was properly limited by the charge. (See, *Craven* v. *Bloomingdale, supra.*)

We are of opinion, however, that both verdicts are excessive. The expert medical witness called by the plaintiff was unable to say that her injuries are permanent and his testimony indicates that she may fully recover within a year or two. The jury were, therefore, properly instructed that they could not award damages on the theory of permanent injuries. We think that in the absence of permanent injury the verdict of $7,500 recovered by the infant should be reduced to $5,000. No damages for loss of services were shown by the mother and the evidence with respect to her disbursements or liability incurred does not sustain the verdict in her favor for $1,000, and it should be reduced to $571.

It follows that the judgments and orders should be reversed

and new trials ordered, with costs to appellant to abide event, unless the plaintiffs stipulate to reduce the verdicts to the sums above indicated; in which event the judgments as so modified and the orders appealed from are affirmed, without costs.

DOWLING, PAGE and SHEARN, JJ., concurred; CLARKE, P. J., dissented.

CLARKE, P. J. (dissenting):

I dissent from the affirmance of this judgment as modified upon the ground that the act of the janitor in assaulting the little girl upon the public street over which neither he nor the defendant had any control was not an act done within the scope of the janitor's employment nor in furtherance of his master's business, nor within his express or implied authority, nor was it incident to the performance of the duties intrusted to him by the defendant.

Judgments reversed and new trials ordered, with costs to appellants to abide event, unless plaintiffs stipulate to reduce verdicts to the sums stated in opinion; in which event the judgments as so modified and the orders appealed from are affirmed, without costs. Orders to be settled on notice.